Good afternoon, your honors. May it please the court. Malia Hugg on behalf of the petitioner, Mr. Ullah, I would like to reserve two minutes of my time for rebuttal. This record compels the conclusion that petitioner has established that he was persecuted and targeted by the Taliban in the past as a polio vaccinator from the remote tribal regions of the country, and that he has a well-founded fear of future persecution in Pakistan. The board erred in holding otherwise in two significant ways, at least two significant ways. First, it required that petitioner report the threats he was receiving from the Taliban in order to prove that his government was unable or unwilling to protect him. And not only that, but it further required that he report to authorities that it deemed more suitable than the ones to whom he did report. Second, the board failed. Didn't the board, didn't they first find that there was no adequate past persecution? So it would be helpful to address that question first. Yes, your honor. The board also did state that the harm that he faced did not rise to the level of persecution. We believe that it did and we have briefed that issue, but I'm ready to talk about it as well. Petitioner faced multiple death threats in person and in writing. His family was attacked. We would argue severely. They could not find where he was. And we submit that this is sufficient to constitute persecution in the past. The court recently held in Wilkinson that harm to the family can count as persecution to the applicant. And so we would submit that these death threats, especially in the context in which they were given as a polio vaccinator in the remote tribal regions of Pakistan by the Taliban. In that context, these death threats are menacing and harmful enough that these threats alone constitute persecution. So we would submit that the board erred in holding otherwise on that point. And then further in terms of the main issue that the IJ said, the IJ said was the main issue in this case, the government's ability or inability to, or unwillingness to protect respondent, petitioner, excuse me. We would submit that the board erred in requiring a heightened a reporting requirement and also by failing to really evaluate the effectiveness provided by the government to petitioner. Counsel, I can't, could you restate the last sentence you froze up for me? Sorry. Sorry. Not only did the board err in requiring that he report, but to report to people and authorities that it deemed more suitable. And second, it also really failed to grapple with the effectiveness of the protection that the Pakistani government supposedly provided to its polio vaccinators. It did not really evaluate the substantial evidence in the record that talked about how not only the polio vaccinators, but the police accompanying them were routinely held by the Taliban. So before I get into that, I can also address the issues on which this court ordered supplemental briefing, which is whether, namely whether the condoned or completely helpless language for matter of AB1 constitutes a change in this court's unable or unwilling to control standard. Can I stop you there? Because the last thing you said before turning away from the facts is that you said routinely that the Taliban routinely carried out these threats. And it seems like what we have is a record, which is even if I agree with you that the record compels the conclusion that he suffered past persecution. It's not the case that the Taliban was always successful, right? In murdering these people. Yes. Isn't that why this standard matters? In other words, when we talk about completely helpless, it seems like the case are such that this standard here in this case may really matter. And I just want to say that for both lawyers, so you can help me out that that's a problem that's really troubling me. Yes, Your Honor, this is a case where maybe it is a matter of degree of the government's protection or the government action to try to protect its polio vaccinators. However, you know, this court's record has stated, for example, in Madrigal, where there was some action taken by the Mexican government to protect against the drug cartels. And the court even acknowledged that there were some successes in that. However, it was not sufficient because as to Mr. Madrigal. Similarly here, where you have a targeted individual, specifically targeted with death context, there is no effective protection for such a person. And in fact, there is objective evidence that where polio vaccinators were actually given such letters warning them of death and that they continue the actions. In any case, they were killed. And there is I have the in this case because he got a letter really was helpless, completely helpless. Is that your argument? Your Honor, we would say that we are consistent with the that inconsistent with this court's precedent where it says that, you know, that basically what we need to show is that there was no effective protection in this case. And but if the court finds that the record that the standard has been heightened, we will still submit that. Yes, the Baxani government in this case would be completely helpless to protect this particular petitioner as somebody who was targeted on this record. So I understand. I'm sorry. Go ahead. No, please, please. I was going to change the subject anyway, so it's fine. I just want to make sure I understand this argument. So we're talking about term terminology. You know, what does unable mean? What is unwilling, condoned, completely helpless? What do these terms mean? But I guess the question I have is how they're how broadly they're applied. So what I took from your last answer and correct me if I'm misstating you or misunderstanding you was that, as in the case of magical, there can be a situation where the government is not unable in every circumstance to do anything. So in magical, there are some instances where they could prosecute the narcotics traffickers. In this instance, there are some instances where the Pakistani government manages to protect the polio workers and the police. But we look at how that applies to Mr. Ullah in particular, whether they can effectively protect him or whether they are able to protect him. And so the fact that they may, in some circumstances, generally be able to offer protection doesn't mean they can directly protect him. Am I understanding you correctly? Yes, Your Honor. Yes. I mean, it is important that we look at the country conditions in an individualized fashion, and that is consistent with this force precedent. Now, the petitioner is not arguing that he needs to be protected from every single harm, all possibility of harm. However, you know, where there is, you know, harm that he has faced in the past, what we're saying is that this record really compels the conclusion that there is at least a 10% chance of future prosecution, at the very least, if not a presumption of such based on the level of harm in the past. But the record shows that the government has taken some efforts to try to combat the Taliban and the murder of polio workers. And that has, I think, implications for the cap claim, because it seems difficult under those facts to argue that they're acquiescing in the Taliban's violence. What do you say about that? Do you torture or do you think that under the record we have that we could say that they do? Your Honor, I think the record could reflect that the Pakistani government would acquiesce in that as well, especially where I believe there is some evidence that, you know, that there is, might be some support in the Pakistani's status or security apparatus for, you know, the Taliban, or they might strategically, you know, have chosen that path. So it could be that that is an argument that could be made. However, our main contention is that there is, you know, that this record compels the conclusion that there is at least a 10% chance that he could be persecuted, that he will be persecuted in the future based on what he encountered in the past. And the Pakistani government will not be able to protect him. So could you address the matter of AB, please? Do you think, are you taking the position that there's a change in standard, that it matters, that it doesn't matter? What's your position, please? Your Honor, we would say that it does not matter on this record. And we can take the- Okay, forget the record for a minute. I didn't ask a clear enough question. Setting aside the question, is it your position that this is a change in standard? No, Your Honor, we can say that, you know, we can say that we can take the Attorney General at his word that he is trying, he is saying that this is consistent with his, you know, with the court's precedent and, you know, that he is not intending- Okay, so we have, we have, thank you for, that's a direct answer, but your time is ticking. So let me just tell you, we have a published opinion in this case, in this circuit, Doe versus Holder, that establishes that this individual, Doe, was not required to show that the government condoned persecution. What's your response to that? I'm sorry, Your Honor, can you repeat the question? Well, my understanding is that you're, you've taken the position that you're willing to agree that these, that these terms are synonymous. Is that right? Yes, Your Honor. So where would that leave the Ninth Circuit precedent? We have a reported opinion that speaks to the word condones and says that in that particular circumstance, our court ruled that a petitioner could prevail if he showed unable or unwilling, and he was not required to show condones. Your Honor, the condone and, I mean, on the other side of it would be the completely helpless standard. So we would say that, you know, it's a disjunctive standard just as the unable or unwilling. So we would say that, you know, if, I mean, we could still prevail on the unable or unwilling prong. I mean, we could still prevail on the complete helplessness prong of the disjunctive standard. I'm not talking about your case. I'm talking about the question of law. And maybe you're not, maybe that's not something you want to gauge in, but you've taken the position that these terms are synonymous. And I'm trying to just to be really clear, in case you haven't reviewed it, this is for the sake of both lawyers. In Doe, the BIA decided that the petitioner was not successful because he had not shown that the government sponsored or condoned harm. Our Ninth Circuit, in a published opinion, said that that was error, that it was sufficient that he had shown that the government was unable or willing. Right. So, Your Honor- They have not treated these terms as synonymously, in other I mean, I understand that. I mean, we, the Attorney General, basically in AB 2, did say that, you know, the standard is consistent with the court's precedent. And so we would, I think the court can defer to the Attorney General and say that the standard and, you know, that the precedent is what is controlling here. And, you know, we, that, you know, condone is, is different than unable or unwilling. So we, I mean, there is some, there is some, I understand what you're saying, that there is some clash between the precedent and what the Attorney General is saying. But if the Attorney General, I think the court should follow the precedent, Your Honor. Did you want to say? The court should follow its published decisions and the precedent, Your Honor. Are published decisions, are you saying? Yes. Or are you saying, I really don't understand what your answer is. Forgive me. Yes. What precedent are you referring to, Counsel? Dovey Holder, Your Honor. Can I just- However we read Dovey Holder, and I would have to say, I don't read it the same way as Judge Christin, but if we entered, if we had granted the motion to remand for the agency to consider the evidence of past persecution, including the attacks on Mr. Ulla's father and brother and threats, and that he felt compelled to move to another part of the country. And then I believe the requested language was for the agency to consider whether the government was unable to protect him. Would that give you the relief that your client wants? Your Honor, we would request that the remand really should be very, very limited in this case, because the IJ basically said that this was the only issue that I, you know, in terms of the government's ability or inability to, or unwillingness to protect him. There should not be an open-ended remand for the government to be able to discuss future persecution or internal relocation or anything further than that. I think this court can remand to clarify the matter of AB standard and also basically to grant the petition, based on, to grant asylum in this case, because there is no other issue other than this. And we have, I think, the record compels the conclusion that the government is unwilling or unable to protect Mr. Ulla. But the BIA didn't engage in the reasonable fear of future persecution analysis in that they determined he didn't have past persecution. And if they had, if they were incorrect, and we were to say, there's not substantial evidence to support that, and they need to consider this other evidence, and then they determined, oh, there is past persecution, then there'd be a presumption of future persecution that the government would have to rebut by changed country conditions. So you're saying they shouldn't go through the future of persecution analysis? Your Honor, I think that in this case, the BIA, if I'm not wrong, did say whether the government was and would be unable or unwilling. So we would say that they have gone through the future persecution analysis that they did say that the government of Pakistan would also be in the future unable to protect Mr. Ulla. So I'm quite confused. I thought they held that they weren't unable. I believe by the matter of AB. Your Honor, I think that they also use the terminology would be in the future was and were and would be. I'm not wrong. So, Your Honor, we think that any remand should be limited in order to maybe clarify the AB standard and, and for a fighting that he, that the government would be, as well as was unable or unwilling to protect Mr. Ulla. I'm remain confused. Sorry, Your Honor. The BIA said that they're unpersuaded that the Pakistani government is unwilling and they're also unpersuaded that it's unable. So they're, but you just said that they found that it was unable and unwilling. So I'm really mixed up. So on page five of the BIA, sorry, the page five of their admin record, it says, because the respondent did not demonstrate that the Pakistani government was or would be unable or unwilling to protect him from Taliban, he's not eligible for asylum. So what I was just trying to say is that I don't think a remand is necessary for the agency to engage in the future persecution analysis where the board has already analyzed the future persecution issue and addressed it here would be meeting the future. He said you didn't demonstrate that it would be unable or unwilling. So why don't, why wouldn't the remand have to be both or else you lose? Your Honor, yes. So, so we would submit that the court basically find that the court finds that this record compels a conclusion that Mr. Ulla prevails because there is substantial evidence here that he, that the government would not be able and was not able to protect him. Your Honor, we would request a remand for a grant of his petition. You agreed with, I'm really quite baffled. You agreed with the government earlier to a remand  were you only agreeing to a remand after a decision? Your Honor, we did not oppose the remand at that point because we wanted, I mean, we can, Your Honor, our first ask to this panel is for a grant for remand for a grant of, of asylum. And then in that, in the event that this panel finds that that is not the case, then we can, we would of course agree to a remand of, to address further issues. However, we think that this record has already addressed those issues. And what would those issues be? Cause I'm really trying to follow you. You want a remand? Your Honor, cause you want an award of benefits, but, but, but just go, your, your followup, your backup is a remand to address what issues? The issues that were mentioned in the motion to remand by the government in terms of, you know, whether, whether there were, whether there was an ask to the, whether the Hasidars who were asked or the security guards who were asked for protection constitutes a government, the Pakistani government, and also whether the, I believe the other issue in the motion, the other issue in the motion, whether the fact that the Pakistani, the fact that his family was targeted under a Corby Wilkinson, whether that can constitute past persecution as well. So there were two issues mentioned in the motion to remand and we can, we would agree to that as well. Okay. Your time is well up. May it please the court. Can, can, am I, am I being heard? I can hear you. Okay. May it please the court. I'm Susan Green and I represent, represent the Attorney General. And there's two things I want to talk about. And I want to make sure I get to both of them. First, I want to talk about the AB standard. And then I want to talk about the reasons why we want remand in this case and why it's remand is necessary. But first about the AB standard. I'm sorry. I don't have your remand motion in front of me for some reason. Okay. What were you asking for remand about? Okay. When I, what I think a remand is absolutely necessary for is in the event that there is that the board overlooked a couple of things that were relevant to past persecution. And so we ask in the remand motion to direct the board's attention to those two things. But the remand motion was, it was somewhat abbreviated in order for both sides to be able to agree to it. What I think is just the real thing that the most important thing for remand is that the board, even assuming that there is past persecution, the board needs to use the required by the regulations to see, even if there is past persecution, whether there is a well-founded fear of future persecution. And it needs to use the presumption so that to say whether DHS has rebutted that. Right. That would all be taken care of if we decided there was past persecution. And I gather from your request that you actually think there was. So leaving that aside, we still come up against the enabling and willing issue before we get to the. And before I say that, just to wind up on the remand, I want to say the reason why we need a remand is because the record shows a lot of difference between the situation at the time of 2014-15 and the record at the time of 2018 shows there's been a huge improvement in law and order and in their ability to control. We would need a remand. I mean, if we decided that there was past persecution and that in the past unable or unwilling, then we would need a remand, as you say, as a routine to apply the burden shifting because the board never did. So that's not a problem, but that's not the reason you were asking for originally. I mean, as I say, the remand motion as filed was, I did not include that because we were not going to be able to agree on that. And Ms. Hawk wanted the remand to only discuss the things that were favorable to her. And I, in order to. Right. But what about the enabling? But we wouldn't get to the burden shifting either if the board were right about the unable or unwilling. Sure. And I'd like to talk about that now. First, I'd like to say that the big point and matter of AB, and I sort of feel like we're at risk of losing track of that. The big point in AB one and two is that the attorney general chose not to change the standard. He said, but then he articulated language that he says is called clarifying. That doesn't mean the same thing. Okay. Okay. So he used a paraphrase that had been used by many courts for a long time. But not ours. So what do we do with that? Okay. Well, first of all, I will say that your court has actually used the paraphrase of sponsor and complicit, which is different. You know, that's even more different. When was that? But that was in the, this is in our brief. The Rodas Mendoza case. But counsel, some of the cases in your brief. So I don't agree with you on this point. I don't want to take up all of your time, but some of the places where your brief sites to instances where we've used the term, it's used in a different context. And so, you know, whether it's become Judge Wallace used it in Ghali, for example, and we go through that. I don't want to take up a whole lot of your time. I'm sure you're familiar with those cases, but in terms of using it in this context, right? I really don't see it. Okay. Well, first of all, may I address your point that you made earlier about the Doe case? The Doe case said that you didn't have to use condone, but that's because you don't have to prove that they were unwilling. It's enough to prove that they're unable. Counsel, that's editorializing those. Your 28J letter says Doe held that since willingness requirement is in the injunctive, disjunctive, the government doesn't have to condone. That's not what Doe held at all. That doe doesn't use the word disjunctive. It didn't go into that at all. As you know, this isn't what you meant, but it is literally what it says here in your 28J letter. So what happened in Doe, as you know, is that the BAA decides that he hadn't shown that the government had sponsored or condoned. Right. And then when our court without really directly addressing that standard, our court decides this person's entitled to relief because he had shown unable or unwilling. So they rejected that standard. Because they were unable. That's how I read Doe. That's my understanding of it. The thing was that you don't have to prove that they condone or that they're unwilling if you prove that they're unable. And that was what that suggested. Can you just tell me how, nonetheless, your either, matter of A, B, either rests on the notion that the terms are interchangeable, which as I suggested earlier, they're not. But I'd like to know whether that's what you're arguing. Or it rests on the notion that the new terms are a subset of unable or unwilling. And it's okay to change the language from a broad standard to a narrower standard. And B, if you have an argument as to why they're synonymous, I'd like to hear it. Okay. First of all, the context was that the Attorney General didn't use one or the other. He used the unwilling, unable throughout A, B. And he also used this paraphrase that other courts have used. We continue to use unable, unwilling and ignore and don't use the condoned or completely helpless. And if we reverse, we grant the petition here because the court seemed to be saying, the BIA seemed to be saying something other than just unable or unwilling, that that would all be just fine. Because we're not, we don't have to go any further than that. We don't have to disapprove anything he said. We just have to say that the standard is unable or unwilling. That's what we've applied. That's what the board, the Attorney General has now said. And this other language is just a paraphrase. Sure. That's what I was trying to say is that the Attorney General left all the existing board and court precedent in effect. He could have done differently. Long opinions about this and for no end. It means nothing. No, no, it's not true that they're for no end. I mean, in A, B, one, he was insisting that they, that the board should apply existing law. And then in A, B, two, he was saying, and I didn't change the existing law. So this court's precedents are still there. They're still good. As well as the board precedents, they're still there. They're still good. And he chose, I mean, look at what happened in the second part of A, B, two. There he showed he knew how to use Brand X when he met you on the nexus reasoning. He didn't use Brand X on the unwilling, unable part. He said the law is the same as it used to be. And he said, and by the way, the reason why, you know, that we have, of course, have used this paraphrase in the past and it's been useful, is where unwilling, unable has never been able to be taken literally. I mean, you, you cannot take unwilling, unable as some kind of mathematical precision. They've always been mostly interpreted by case-by-case adjudication. The jumping off point for this, for the interpretation in A, B, one was that persecution means the government. Why does persecution mean the government? As a matter of the English language, it doesn't. I can persecute you. Well, it's always been interpreted in the context of asylum as persecution, meaning that there's a governmental role. And that there's, to start with that, it's not a plain words matter. Persecution doesn't necessarily mean the government. The attorney general has never said that persecution was an ambiguous phrase. And in fact, the courts have not said that either. But it is in fact an ambiguous phrase. I'm sorry, I didn't hear you. It is in fact an ambiguous phrase. It is an ambiguous phrase. And the meaning that's been given into it in asylum law, and even in immigration law before the Refugee Act, was that it includes a concept, the governmental, there is a governmental role in that the government either needs to be the persecutor, or it needs to be... Explaining why it has to be this extremely narrow concept, which is what I if you broaden it out, you're violating the plain language of persecution, which isn't true. So in any event, it's just so hard for me to get my head around this notion that the unable and unwilling is still the standard. But there's this other language that the board obviously thinks has some force because it keeps using it. And it uses it to come up with something narrower than it seems to me you would come up with if you just said unable. For example, leaving aside the condoning, which it seems quite obvious, doesn't just mean you won't. There are various reasons somebody won't do something. And they don't necessarily involve condoning anything. Your Honor, the Attorney General did sign a dictionary definition of a dictionary definition of condone that said to permit the continuance of. So I'm, I mean, I don't know what you think about the dictionary definition of condone. Can you all hear me? The dictionary definition of condone was to permit the continuance of. And he said that is, you know, that isn't obviously broader than unwilling to control. Putting language on something to most people, condone means approve of. As opposed to, for example, somebody has a gun to their head and says, well, I am, I can't do, well, I am unwilling to do this because I'm going to get shot. Not because I think this is the right thing to do. Doesn't that mean unable? I mean, I think we're mixing apples and oranges here. I'm unable to help you if somebody has a gun to my head. I mean, that's. I think that's right. I looked up dictionary definitions and it's tricky or difficult. And I agree with Judge Berzon. It's difficult because there are many, many dictionary definitions, including the one the Attorney General cited. And I wrote a list of them and I, in the mess of papers on my desk, I can't find it. I'll know I'll find it when 10 minutes too late. But I found multiple definitions of unable equated to helpless or impotent. Condone to, oh, pardon. And it will. But it also has a connotation of impliedly endorsing when we talk about condone. And that's because I agree with Judge both my colleagues. There's lots of definitions out there. Condone in particular strikes me as not synonymous with the terms that we have used, unable or unwilling, unwilling and condone. I don't understand how we can treat those as equivalence counsel. Your Honor, I mean, that's why I think that we're getting we're losing the forest for the trees when we're talking about dictionary definition two or three or four of these terms. The Attorney General said the body of law that exists interpreting the persecution that includes a governmental role and always has since matter of Acosta and before. That law is all still good law. Your Ninth Circuit law is still there. OK, here's the deal. You mean forgive me for interrupting, but do you mean that you interpret a B2 to say, you know, circuit by circuit, the law will remain the same? Well, I mean, I think that a B2 didn't split it out and then circuits. Well, that's the problem. A B2 says these terms are synonymous and I'm not changing the law. But for the Ninth Circuit, I think that if you just take it as a hypothetical, but I pretty well showed my hand, I think it is a change of the Ninth Circuit's law. So that's why I really struggle having two standards out there. If you take it as a hypothetical that or just take it as a given for the sake of the question that I think that standard is different standard and it's a tougher one to meet, then what what is the correct path for us so that we don't make a I'm not I'm not here to argue about which standards is the better one. I'm just trying to make sure we don't wind up with a muddled mess in the Ninth Circuit. What is your suggestion? Well, I mean, first of all, my suggestion is that I think that you need to remand this case because in this case, we have a problem that hasn't been resolved and that that needs to apply or immigration judge needs to apply the burden shifting method and find out whether there is going to be trouble with that. Because I'm sorry, we have to apply the burden shifting if they were right about the unable or unwilling, because that's past persecution. And if they are right about that, then we don't get to the point. Oh, OK, well, then that means I didn't get to talk about that. I think that that I'm able and willing thing has a problem. And that is that in the mishap pointed this out in a brief, and I think she was right in that she said that the board overlooked this evidence when the board required and that said that he had shown that these security guards that he reported it to were government actors. Then I think that she pointed out that there was evidence that those Casa D'Ars are what they have for police in the area. And I kind of imagine the larger point was that they didn't think the record demonstrated sufficient condoning or helplessness. Yeah, and the reason why they said that is because they both IJ and the board relied heavily on the fact that he had failed to report his situation to the authorities so that to that led to this. They're holding that that he didn't show the government was unwilling and unable to protect him. And so if I could just say just a minute, I know I'm past my time. OK, OK, so the immigration judge understandably focused on the fact that he didn't ask for the security guards for the polio vaccinator security guards. He said that when the vaccine came to him, it came in a car with a driver and a polio vaccinator security guard. But then when they gave him the vaccine, he said, oh, but they didn't go with me. So the immigration judge was, well, why didn't you ask for them to go with you? Because the government had this polio vaccinator security guard system and you didn't ask for it. And he said, well, the first time I got a threat, I didn't take it seriously. And then the second time I got a threat, I quit. So the immigration judge rightfully focused on the fact that they didn't point that he didn't show that he had asked for this government protection that was available. And so so that was what she was going on. And then it went to the board. And at that point, Ms. Haack made a good argument to the board. She said, well, wait a minute. He said that he talked to these other general security guards. And at that point, I think the board probably should have just remanded because that was something that immigration judge didn't genuinely overlook. And Ms. Haack pointed that out to the board. And what the board said was, well, he didn't show these other security guards worked for the government. And as Ms. Haack pointed out to you in her brief, and well, actually, there was evidence in the record in his declaration that those custodians are what they have for police. So for those reasons, the things that the agency was really focused on, they were focused on that he never sought government protection. And I agreed with Ms. Haack that they overlooked something relevant, very relevant. And that's why we agreed that it should be remanded. Okay. But counsel, again, I'm trying to get to a place where our case law is not creating confusion. If we're to remand and the government goes forward and applies the standard that I think your brief indicates you're going to argue for, it seems to me that that creates a problem. Wouldn't we want to remand and say, here's the standard in the Ninth Circuit, apply that and go back and figure this out? Well, just so we don't have to do this twice? I mean, if you're asking me, obviously I don't think that you have to tell them anything about the standard because I think the standard hasn't changed. But if you're saying- Well, they applied a standard today. I think that they've applied a standard that's inconsistent with our case law. I'm not here to tell you that I think would make a difference. I'm just saying, I don't want to remand it twice. I don't want to wind up remanding this twice. It is our goal as a court to get things resolved. And so I'm concerned about this piecemeal, what I envision is going to be a piecemeal process. I want to give you a fair opportunity to respond. Okay. Well, I mean, I think that there's nothing else that I can say in that. I don't think that there's anything that's happened so far is inconsistent with Ninth Circuit case law. And so therefore, I think that it needs to just be remanded for the board, the agency to apply the burden shifting model required by the regulations. What if we did a remand that said, we find there was not substantial evidence to support the board's conclusion that there was no past persecution? And the board overlooked the evidence you've outlined, and it needs to be remanded and need to consider this. And we went further and said, we conclude there was past persecution. The board needs to apply a presumption of a reasonable fear of future persecution. And it's been years now. So at this point, the presumption comes into play and the government, if they choose to do so, if they choose to dispute his request, they would have to show change conditions. And in any event, we tell them, and while you're considering whether the Pakistani government is standard, unable and unwilling, and nothing more stringent than that, even if you view the two as the same, you cannot apply any kind of heightened standard. And that completely helpless or condoned doesn't mean anything in addition to unwilling or unable, but that's it. That's what they have to apply. Would that satisfy the government? I mean, would that get at what you were trying to do? Yeah, that sounds correct to me. I'm concerned about you saying that they can't use the paraphrase, but I agree that it really shouldn't make any difference. Because they use both here, right? So even if they use the paraphrase, they cannot interpret it to mean more or something more difficult or more stringent. Okay, Your Honor. Yeah, it's true that it shouldn't be more stringent, but I mean, this court also has paraphrases, and I'm concerned if you say that you can't use any other words besides unwilling, unable, first of all, I think that is going to prevent the courts from trying to explore the actual meaning of those words. And the other thing is, what about other case law that this court has that has paraphrased it? So Judge Beatty's hypothetical, again, to try to be really clear, was that the remand would indicate that they cannot use that terminology, and it sounds like you're saying that you would not agree to that. Yeah, I don't want to cut off something that is going to make the Ninth Circuit different from the other circuits. And I don't think that that's necessary, but if you are determined to say that it is different, then I think that what Your Honor has said, Judge Beatty has said, does work, yes. Does work? Did you say it does work? Yes, ma'am. So that's a yes to, we could remand if we said on remand, do not apply anything other than unable or unwilling. I understood, Judge Beatty, nothing more stringent than unable or unwilling. Okay, forget, yes. Okay, yeah, nothing more stringent than unwilling, unable is good, yes, right. Okay, so then that won't decide the case, essentially, for the most part, and leaves a future issue open, but that's not the original remand that we were asked to do. So thank you very much, you're way over time. Thank you. You can have, let's say, three minutes, okay? You're muted. Thank you, Your Honor. Your Honor, I would agree with Judge Beatty's assessment of the remand and what would be useful. The only thing that I would sort of maybe ask the court is to take note of the IJ had a very unusual kind of sentence in her decision, which said that if the higher court disagrees with my analysis on government ability or unwillingness to protect, that I would simply ask the court to grant asylum and not remand for any reason, which I thought was interesting. And I think that what that means. Well, we couldn't do that because the board has to decide the burden shift of standard, right? Right, yes, Your Honor. I would just like to say that, I mean, the government never made the alternate argument on the first instance about change conditions or anything. So I would just say, I mean, to give them another bite at the apple to be able to argue. The problem is Ventura, right? The Supreme Court has said that we can't do that. The court hasn't addressed it, we can't address it in the first instance. So we're precluded from doing that. They have, unfortunately, there's some inefficiency involved in that, but that's the system. They have to decide it first. Yes, Your Honor. So, I mean, if the court does remand with the corrections in the way this standard was applied in a heightened manner in petitioner's case, that is perfectly fine with petitioner. I think even if whether the standard was raised or not, it was certainly applied in a heightened, raised manner in this case. And I think we all agree on that. So I think- Well, it doesn't sound like we do agree on that. You indicated earlier that you don't think it is a heightened standard. Could you please clarify? Do you think this is a heightened standard? Your Honor, the way in which it was applied here was certainly a heightened standard. I guess- I'm not talking about the application, I'm talking about the legal standard, counsel, please. What is your position on this? I really feel like you've given me a couple of different answers and I'm trying to get it. What's your position? Your Honor, even if, so we can defer to the attorney general and adjust on that point that he's not intending to change this court's precedent. However, like I believe Judge Berzon also said, the different terminology, condoned versus unable, I mean, certainly condoned requires something a little bit different and a little bit higher. So it's very easy for a fact finder to apply it in a heightened manner. I would submit that perhaps it is perhaps a heightened standard, whether the attorney general said that or not, because it's very susceptible to being applied in a very heightened manner, like as it was in this particular case. So that's what I would say about that, Your Honor. Okay, thank you. Your time is up. We appreciate your arguments. The case of Hula versus Rosen is submitted. And we will go to the last case of the day, which is United States versus Prasad or Presa.
judges: Berzon, Christen, Bade